OPINION
In Case No. 98-CA-56, appellants Cassandra and Darrell Lemaster appeal from an order granting permanent custody of their minor child, Sierra, to appellee Clark County Department of Human Services. In Case No. 98-CA-57, the Lemasters appeal from an order committing their other two minor children, Chad and Jason, to long-term foster care. The appeals have been consolidated. The Lemasters argue that the trial court erred by determining that Sierra should not be placed with them within a reasonable amount of time, by placing Chad and Jason in long-term foster care, and by failing to consider the statutorily-prescribed alternative of placing the children in the custody of one of the Lemasters' relatives.
We conclude that the trial court did not err by determining that Sierra could not be placed with the Lemasters within a reasonable amount of time, and should not be placed with the Lemasters, by placing Chad and Jason in long-term foster care, or by refusing to place the children in the custody of one of the Lemasters' relatives. Accordingly, the judgment of the trial court is Affirmed.
 I
The Lemasters, who have been married since 1984, have had two children together: Chad, born July 12, 1984; and Jason, born September 5, 1985. In September, 1996, CCDHS requested and received temporary custody of Chad and Jason as a direct result of the Lemasters' drug and alcohol abuse. The children were placed in foster care.
On May 21, 1997, Cassandra gave birth to Sierra. Darrell is not Sierra's biological father. The day after Sierra was born, CCDHS moved for temporary custody of her. The trial court denied CCDHS's motion at that time, choosing, instead, to issue a protective supervision order. The trial court awarded guardianship of Sierra to Darrell's mother, Glenna Lemaster, and ordered that Sierra stay in Glenna's residence, where the Lemasters were also staying. In September, 1997, Cassandra left Glenna's residence, taking Sierra with her, after she and Darrell experienced marital problems. Cassandra was gone for two weeks, during which time her whereabouts were unknown. Glenna filed a police report. Upon Cassandra's return, CCDHS requested and received temporary custody of Sierra.
CCDHS's temporary custody of the Lemaster children was subsequently extended until February 13, 1998. On February 12, 1998, CCDHS moved for permanent custody of Sierra. A month later, CCDHS moved to have Chad and Jason placed in permanent long-term foster care. After holding a hearing on the motions on May 14, 1988 and June 8, 1998, the trial court granted CCDHS permanent custody of Sierra, and placed Chad and Jason in permanent long-term foster care, with the proviso that the boys continue seeing their parents.
The Lemasters appeal from the trial court's decision.
 II
The Lemasters' First and Third Assignments of Error state as follows:
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT IT HAD BEEN SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN SHOULD NOT BE PLACED WITH THE PARENTS WITHIN A REASONABLE AMOUNT OF TIME.
 III. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ORDERED PERMANENT FOSTER CARE FOR TWO OF THE PARTIES [sic] MINOR CHILDREN WHEN THE PARENTS HAD BEEN MAKING SINCERE ATTEMPTS TO COMPLY WITH THE CASE PLAN.
The Lemasters argue that the trial court erred by determining that Sierra should not be placed with them within a reasonable amount of time, and by placing Chad and Jason in long-term foster care, because the evidence presented demonstrated that they had taken "great strides" in meeting the goals of their case plan for family reunification. Therefore, the Lemasters contend, the trial court should have given them additional time to prove their ability to parent their children. We disagree.
A court may grant a public children services agency permanent custody of a child if it determines, by clear and convincing and evidence, that it is in the best interest of the child to do so, and that "[t]he child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)(1). In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, a court must consider the twelve factors listed in R.C. 2151.414(E). Those factors include whether the parents have failed "continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home," whether the parents have a "[c]hronic * * * chemical dependency * * * that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year" of the hearing on the motion, and whether the parents have "demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." R.C. 2151.414(E)(1), (2), and (4). If the court finds any one of the twelve factors present, the court must enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(E).
A court may place a child in long-term foster care if it determines by clear and convincing evidence that it is in the best interest of the child to do so, and "[t]he parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, * * * and the child retains a significant and positive relationship with a parent or relative." R.C. 2151.415 (C)(1)(b).
Pursuant to their case plan for family reunification, the Lemasters were called upon to obtain drug and alcohol assessments and treatments, to maintain regular visitation with their children, to attend classes to enable them to improve their parenting skills, and to obtain and maintain a stable living environment for their children. The trial court found that the Lemasters had not substantially complied with any of the objectives of their case plan. There was clear and convincing evidence presented to support the trial court's determination.
At the hearing held on CCDHS's motions, the Lemasters testified that they had stopped using drugs; however, both admitted they were still using alcohol. The Lemasters testified that they had cut back on the amount of alcohol they consumed, and Cassandra testified that she was attending Alcoholics Anonymous and Narcotics Anonymous meetings. Nevertheless, there was testimony by Chad's and Jason's foster parent that Cassandra showed up at the foster parent's home on Christmas at 11:30 a.m., smelling of alcohol. The foster parent refused to allow her to take Chad and Jason. Furthermore, less than a month and a half before the the initial hearing on CCDHS's motions, Cassandra was arrested at a grocery store for stealing two hams.[1]
Cassandra admitted she was drunk during this incident.
Cassandra argues that although she has had "several relapses" during the course of her treatment for drug abuse, relapses are merely a part of recovery. Although we do not dispute that contention, the evidence showed that Cassandra has relapsed on fourteen occasions over the last three years. Cassandra also testified that she has not used drugs since April, 1997; however, Cassandra has not been tested since December, 1997. Additionally, Cassandra was discharged from a substance abuse program in February, 1998, for non-compliance; she had quit the program in December, 1997.
Darrell testified at the June 8th hearing that he had not used an illegal substance for six to eight months, and asserted that he is merely a "social drinker" now, consuming only about twelve beers a month. Darrell asserted that he has been cutting back on his drinking "gradually," and eventually plans to quit "cold turkey," "hopefully" before his kids return home. However, there was testimony that Darrell had been drinking since he was an adolescent, and was in the latter stages of alcoholism. At the time of the hearing, Darrell was not attending any AA or NA meetings, or otherwise seeking treatment for his drug and alcohol addictions. Testimony was presented showing that he failed to complete drug or alcohol treatment programs on several occasion.
Furthermore, the evidence showed that when Darrell was drunk he became violent towards Cassandra. Darrell, himself, admitted to striking Cassandra on "three or five" occasions, explaining that, "I get a little irate when I drink." There was additional testimony that when Cassandra and Darrell were together, Cassandra would stray from her own treatment program for drug and alcohol abuse.
The Lemasters also did not substantially comply with the case plan objectives requiring them to attend parenting classes, and to visit their children regularly. Darrell did not attend any parenting classes. Cassandra, on the other hand, did attend some parenting classes while at a treatment center. Cassandra asserts that she was put on a waiting list to attend additional parenting classes, but was only contacted about an opening just prior to the hearing; she was scheduled to begin attending parenting classes the week of the hearing. However, other testimony revealed that a letter was sent to Cassandra at her parents' residence in January, informing Cassandra that there was an opening in parenting classes begining that month. Cassandra testified that she did not receive the letter until "just recently." However, the evidence showed that Cassandra received a welfare check mailed to her at her parents' address, and promptly cashed it.
The Lemasters blamed their failure to maintain regular visitation with their children on the ground that they lacked transportation. However, Darrell's mother testified that she had a car until February, 1998, and was willing to transport Darrell and Cassandra to visit their children. Moreover, Cassandra did not inform CCDHS that she was having trouble finding transportation until March, 1998. Furthermore, even after CCDHS moved the visitation to a location more accessible to Cassandra, she still visited with her children on only four out of eight possible occasions.
In light of the foregoing, the trial court did not err by determining that Sierra could not be placed with her parents within a reasonable amount of time, and should not be placed with her parents, nor did it err by placing Chad and Jason in long-term foster care.
The Lemasters' First and Third Assignments of Error are overruled.
 II
The Lemasters' Second Assignment of Error states:
 II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DID NOT CONSIDER ALTERNATIVES PRESCRIBED BY STATUTE BEFORE GRANTING PERMANENT CUSTODY OF SIERRA LEMASTER TO CCDHS AND PERMANENT LONG TERM FOSTER CARE OF JASON AND CHAD LEMASTER.
The Lemasters argue that the trial court erred by not placing their children with Darrell's mother, Glenna, as an alternative to granting CCDHS permanent custody of Sierra, and placing Chad and Jason in long-term foster care. We disagree.
A social worker from CCDHS testified that the agency had decided against placing the children with Glenna because of Glenna's age, and because Darrell and Cassandra — who were living with Glenna — had a history of domestic violence. Although, Glenna's exact age was not made known at trial, it appears from the record that Glenna is an older woman. Darrell is 39, and Glenna collects Social Security. Furthermore, while Glenna testified that she was physically able to take care of the children, she would be responsible for taking care of two teenage boys and a one-year old girl.
Leaving aside the issue of Glenna's ability to care for the children, there is also the issue that has permeated this case, to wit: Darrell's and Cassandra's continuing addiction to drugs and (at the very least) alcohol, which foments physical violence between the two. Darrell and Cassandra have never dealt effectively with that problem. Because Darrell and Cassandra reside with Glenna, the trial court would be placing the children in a potentially dangerous environment if it granted Glenna custody of the children. Accordingly, the trial court did not err by refusing to award custody of the children to Darrell's mother.
The Lemasters' Second Assignment of Error is overruled.
 IV
All of the Lemasters' assignments of error having been overruled, the judgment of the trial court is Affirmed.
GRADY, P.J,. and BROGAN, J., concur.
Copies mailed to:
Roger A. Ward, Linda J. Cushman, Mark M. Feinstein Hon. Joseph N. Monnin
[1] Cassandra was actually charged with Robbery for the incident; the force element of the charge arose from her attempts to resist apprehension by the store's security personnel.